**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CALLISTA SUZENA CHIWOCHA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1189-R** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Callista Suzena Chiwocha, a Zimbabwean citizen proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging her detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Docs. 1, 4).[2] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 6), Respondents timely filed a Response to the Petition.[3] (Doc. 8). Petitioner timely filed a reply. (Doc. 9). For the reasons set forth below, the undersigned recommends that Petition be **GRANTED in**

---

[1] Petitioner is currently housed at the Diamondback Correctional Facility in the Western District of Oklahoma. (Doc. 4, at 1).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The response was not filed on behalf of Respondent Fred Figueroa, Warden of the Diamondback Correctional Facility, because he is not a federal official. (Doc. 8, at 1 n.1). The undersigned concludes that a separate response from Fred Figueroa is not necessary to resolve this matter.

**PART** and that the Court order Respondents to provide Petitioner with an individualized bond hearing.

## I. Factual Background and Procedural History

Petitioner is a citizen of Zimbabwe. (Doc. 4, at 12). Petitioner first arrived in the United States on January 15, 1970, on an F1 Student Visa. (Doc 8, at Ex. 1, at 2). Petitioner adjusted status to Legal Permanent Resident on May 7, 1984, through her husband's asylum claim. (*Id.* at Ex. 4, at 2). On September 12, 2017, Petitioner was convicted in the United States District Court for the Western District of Michigan of Conspiracy to Defraud the Government by False Claims. (*Id.* at Ex. 5, at 2). She was sentenced to 120 months of imprisonment. (*Id.* at Ex. 3, at 2). This conviction qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(M). Under 8 U.S.C. § 1227(a)(2)(A)(iii), this aggravated felony subjected Petitioner to removal proceedings.

Petitioner was first placed in removal proceedings through the issuance of a Notice to Appear on June 14, 2022, (*Id.* at Ex. 1, at 2), but the case was administratively closed by the immigration judge pending Petitioner's release from federal prison. (*Id.* at Ex. 7, at 3). On April 23, 2025, Petitioner was released on supervision under the First Step Act and transferred to ICE custody. (Doc. 4, at Ex. 3, at 2). On May 7, 2025, the removal proceedings were reopened. (Doc. 8, at Ex. 8, at 3). Petitioner was detained under 8 U.S.C. § 1226(c). (Doc. 8, at 3). On August 19, 2025, Petitioner was denied a bond hearing as she was not eligible for bond under § 1226(c) because she was convicted of an aggravated felony. (*Id.* at Ex. 9).

On October 27, 2025, an immigration judge denied Petitioner's applications for asylum, withholding of removal, and withholding/deferral of removal under the Convention Against Torture; denied Petitioner's application for Adjustment of Status and Waiver of Inadmissibility; and ordered Petitioner to be removed from the United States. (*Id.* at Ex. 6, at 14-15). On November 17, 2025, Petitioner filed an appeal challenging the decisions of the immigration judge with the Board of Immigration Appeals ("BIA"). (Doc. 4, at Ex. 7). The appeal before the BIA is pending. (Doc. 4, at 16); *see also* EOIR, Automated Case Information, at https://acis.eoir.justice.gov/en/ (last accessed Aug. 31, 2026). On May 22, 2026, Petitioner filed this Petition. (Doc. 1). At the time she filed her Petition, Petitioner had been in immigration detention for nearly 13 months.

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises three grounds for relief, alleging that: (1) her prolonged detention violates 8 U.S.C. § 1231(a)(6) under *Zadvydas*; (2) her 13-month long detention is unreasonably prolonged in violation of her substantive due process rights; and (3) the denial of an individualized custody determination violates her procedural due process rights. (Doc. 4, at 20-22). For relief, Petitioner seeks immediate release. (*Id.* at 8).

Respondents argue: (1) Petitioner's *Zadvydas* claim is not ripe; (2) Petitioner's *Zadvydas* claim fails on its face; (3) if Petitioner's *Zadvydas* claim is valid, Respondents have rebutted it; (4) the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), does not apply; (5) if the *Mathews* test applies, it favors continued detention; (6) Respondents have complied with the INA and its regulations; (7) if Respondents did violate regulations, that

violation did not prejudice Petitioner; and (8) the failure to state a *Zadvydas* claim precludes a claim for substantive due process. (Doc. 8, at 7-15).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. Petitioner's *Zadvydas* Claim Is Not Ripe Because the Removal Order Is Not Final.

Prior to the entry of a removal order, 8 U.S.C. § 1225 and § 1226 govern the detention of aliens. "After the pre-removal period concludes, the statutory authority to detain an alien shifts to 8 U.S.C. § 1231." *Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188 (D. Colo. 2014). Under 8 U.S.C. § 1231(a)(2)(A), a non-citizen is subject to a 90-day removal period, where detention is mandatory. *Id.* at 1189 ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . . During the removal period, the Attorney General shall detain the alien.") (quoting 8 U.S.C. § 1231(a)). This shift from the "pre-removal" period under §

1225 and § 1226 to the "removal" period under § 1231(a) is triggered by the latest of three events:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). A removal order typically becomes administratively final "upon the earlier of": "a determination by the [BIA] affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." 8 U.S.C. § 1101(a)(47)(B).

Thus, Petitioner's pre-removal-order period has not ended because her appeal to the BIA is still pending. Petitioner remains detained under § 1226(c), which mandates detention without bond for non-citizens convicted of aggravated felonies. Accordingly, Petitioner's claims that her present immigration detention is unlawful under § 1231 or *Zadvydas v. Davis*, 533 U.S. 678 (2001), are without merit. *See Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 938 (D. Colo. 2025) (explaining that "*Zadvydas* involved a *statutory* interpretation of § 1231(a)(6)" and recognizing that "as-applied constitutional challenges to prolonged detention are separate and distinct from the statutory prohibition against indefinite detention embodied in *Zadvydas*").

## V. Petitioner Is Entitled to Habeas Relief Because Her Prolonged Detention Violates Due Process.

"It is well established that the Fifth Amendment entitles aliens to due process of law

in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, this protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Id.* at 690. Under these due process principles, civil immigration detention is constitutional only in "certain special and narrow nonpunitive circumstances," and it must "bear[] [a] reasonable relation to the purpose" for which the non-citizen was detained. *Id.* (citation and quotation omitted). The Supreme Court has identified those purposes as mitigating the risk of danger to the community and preventing flight. *Id.* at 690-91; *see also Demore*, 538 U.S. at 527-28. And when a non-citizen's detention becomes unreasonably prolonged in relation to these purposes, his or her continued detention may violate the Fifth Amendment.

Petitioner alleges that her continued detention violates both substantive and procedural due process. (Doc. 4, at 21-22). "[T]he distinction between procedure and substance in the context of mandatory immigration detention is not as clear cut as [one might] make out." *Hernandez v Mullin*, Case No. CIV-26-475-R, 2026 WL 1625669, at *3 (W.D. Okla. June 5, 2026) (quoting *Rodriquez v. Frink*, 823 F. Supp. 3d 678, 687 (S.D. Tex. 2026)). Indeed, the lack of a bond hearing creates a conceptual blurring stemming from the need to consider the sufficiency of the procedures in place (procedural analysis) to ensure that prolonged detention remains reasonable in relation to the purpose of a statute mandating detention (substantive analysis). *See id.* As set forth below, there are distinct

tests for each analysis, which in the instant case lead to the same result: Petitioner's due process rights have been violated by her prolonged detention without a bond hearing.

**A. Petitioner's Prolonged Detention Violates Her Substantive Due Process Rights.**

Petitioner's Ground Two alleges her detention has become so prolonged that it violates her substantive due process rights. (Doc. 1, at 17-24). Petitioner is detained under 8 U.S.C. § 1226(c), which mandates detention for non-citizens with certain criminal convictions. While "the Supreme Court has rejected facial challenges to mandatory detention under § 1226(c)," in *Demore v. Kim*, 538 U.S. 510 (2003), "noncitizens detained under § 1226(c) may, in some circumstances, bring as-applied Due Process challenges to their prolonged detentions." *Hernandez*, Case No. CIV-26-475-R, 2026 WL 1625669, at *1-2; *see also, e.g., Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3021514, at *2-3 (W.D. Okla. Mar. 9, 2023) ("*Jalloh I*") (finding it appropriate to conduct a reasonableness analysis to determine whether the petitioner's prolonged mandatory detention under § 1226(c) was unconstitutional); *Nguyen v. Carter*, No. 26-3008-JWL, 2026 WL 522650, at *2 (D. Kan. Feb. 25, 2026) (same); *Smith v. Barr*, 444 F. Supp. 3d 1289, 1301 (N.D. Okla. 2020) (same). "[A]t some point, detention can become so prolonged as to become unreasonable or unjustified, at which time a petitioner will be entitled to an individualized bond hearing." *Jalloh I*, 2023 WL 3021514, at *2 (citation and quotation omitted).

The Tenth Circuit has yet to endorse a test for determining when substantive due process requires a bond hearing for non-citizens in mandatory detention. However, courts in the Circuit have "analyze[d] whether [a non-citizen's] detention has become

unconstitutionally prolonged under the six-factor balancing test set forth in *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019)." *Juarez v. Choate*, No. 1:24-CV-00419-CNS, 2024 WL 1012912, at *6 (D. Colo. Mar. 8, 2024), *appeal dismissed* (June 24, 2024); *see also* Vital v. Baltasar, No. 26-CV-01625-NYW, 2026 WL 1965075, at *3 (D. Colo. July 7, 2026); *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *11-13 (D. Colo. Dec. 17, 2025); *Ramirez v. Bondi*, No. 25-cv-01002-RMR, 2025 WL 1294919, at *6 (D. Colo. May 5, 2025), *appeal docketed*, No. 25-1263 (10th Cir. July 8, 2025);[4] *Arostegui-Maldonado*, 794 F. Supp. 3d at 939-42; *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 n.14 (D. Colo. 2024).

The *Singh* factors ask the Court to analyze "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Jalloh II*, 2023 WL 3690259, at *3 (citation modified).[5]

**1. The Total Length of Detention**

Petitioner has been detained by ICE since April 23, 2025, which now amounts to

[4] On July 24, 2026, the Tenth Circuit abated the appeal pending the Supreme Court's decision in *Genalo v. Black*, No. 25-886. *Munoz Ramirez v. Blanche*, Case No. 25-1263, Order, Doc. 56 (10th Cir. July 29, 2026).

[5] The *Singh* factors share much in common with the Third Circuit's multi-factor analysis for substantive due process challenges to prolonged detention. *See German Santos v. Warden Pike Cnty. Corr. Facility*, 956 F.3d 203, 211 (3d Cir. 2020) (analyzing duration of detention, likelihood of continuing detention, reasons for the delay, and difference from criminal punishment).

over 16 months of continuous detention. (Doc. 8, at Ex. 5, at 2). In analogous cases where petitioners were detained for similar periods of time, courts in this Circuit have concluded that the first *Singh* factor weighed in favor of the petitioner. *See Jalloh II*, 2023 WL 3690259, at *4 (finding 18-month detention "weighs heavily in Petitioner's favor"); *Vital*, 2026 WL 1965075, at *4 (finding 18-month detention weighs in petitioner's favor); *Vizguerra-Ramirez*, 2025 WL 3653158, at *11 (finding 9-month detention weighs in petitioner's favor); *Arostegui-Maldonado*, 794 F. Supp. 3d at 939 (finding 20-month detention weighs in petitioner's favor); *Ramirez*, 2025 WL 1294919, at *6 (finding 16-month detention weighs in petitioner's favor). Further, "Respondents cite no cases suggesting that a detention of [16] months is reasonable." *Jalloh II*, 2023 WL 3690259, at *4. Respondents point out that *Demore* found that § 1226(c) does not violate due process when it mandates detention because removal proceedings have a definite end. (Doc. 8, at 9) (citing 538 U.S. at 529). However, *Demore* assumed that most non-citizens detained under § 1226 would be detained for 47 days on average, and that some could be detained for up to four months in rarer cases. 538 U.S. at 529-30. The 16-month detention in the as-applied challenge here greatly exceeds that assumption. Thus, this first factor weighs heavily in Petitioner's favor.

**2. The Likely Duration of Future Detention**

"Second, the Court considers how long the detention will likely continue in the absence of judicial relief." *Jalloh II*, 2023 WL 3690259, at *5. "Courts examine the 'anticipated duration of all removal proceedings'—including administrative and judicial appeals—when estimating how long detention will last." *Id.* (internal quote omitted).

Petitioner asserts, and Respondents do not contest, that detention will continue for another six months as her appeal with the BIA is processed. (Doc. 4, at 16). The Court should not penalize Petitioner for exercising her right to judicial review of her immigration case. *See Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (noting "courts have consistently declined to 'hold [a petitioner's] efforts to seek relief through the available legal channels against [her]"); *Chairez-Castrejon v. Bible*, 188 F. Supp. 3d 1221, 1229 (D. Utah 2016) ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.") (quotation omitted). Accordingly, Petitioner's detention could continue for months. *See Vizguerra-Ramirez*, 2025 WL 3653158, at *11 ("detention will definitely terminate at some point, but that point is likely to be many months or even years from now") (citation and quotation omitted). Six more months, after 16 months already spent in detention, is a significant burden on Petitioner. Thus, this factor also weighs in Petitioner's favor.

### 3. The Conditions of Detention

Courts next "consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Jalloh II*, 2023 WL 3690259, at *5 (internal quote omitted). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Petitioner alleges, and Respondents do not contest, that the conditions of confinement at the Diamondback Correctional Facility "do[] not differ from a criminal prison." (Doc. 4, at 17). Petitioner describes her detention as prison-like: the facility used to be a prison, the facility is surrounded by high fences, and

detainees often have their movement restricted within the facility. (*Id.*)

Petitioner is 73 years old and has also alleged her "health is deteriorating with any cold or flu that she catches in the crowded conditions she lives in." (*Id.*) She finds it "very hard for her to heal" and describes how her "legs swell and hurt so badly because of poor circulation." (*Id.*) Petitioner also describes a need for cataract surgery and complains of itchy eyes, burning, swelling, and blurry vision. (*Id.*); *see Viruel Arias v. Choate*, No. 1:22-CV-02238-CNS, 2022 WL 4467245, at *2 (D. Colo. Sep. 26, 2022) (finding this factor favors petitioner where "the conditions of her detention are poor and exacerbated by her health complications" and even though she received mental health services while in detention, it was "insufficient . . . to explain how the conditions of [petitioner's] confinement differ from the conditions of penal confinement"); *Juarez*, 2024 WL 1012912, at *7 (same). Thus, this factor weighs in Petitioner's favor.

### 4. Delays in the Removal Proceedings Caused by the Detainee

The fourth and fifth factors consider the delays caused by the parties. "In considering delays in the removal proceedings caused by the detainee, courts should be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Jalloh II*, 2023 WL 3690259, at *5 (internal quote omitted). Delays have arguably been caused by Petitioner's appeal of her immigration case. (*See* Doc. 4, at 16) (anticipating 6 months of delay from the pending appeal).

This Court, however, should not hold Petitioner's efforts to seek relief through the

available legal channels against her—particularly where Respondents do not allege that Petitioner has engaged in any bad-faith dilatory tactics. *See Jalloh II*, 2023 WL 3690259, at *5 ("This Court will not hold Petitioner's efforts to seek relief through the available legal channels against him."); *German Santos*, 965 F.3d at 212 ("We will not hold [petitioner's] appeals and applications for discretionary relief against him."). Thus, the fourth factor favors Petitioner.

**5. Delays in the Removal Proceedings Caused by the Government**

Petitioner does not allege any facts suggesting the Respondents would delay in effecting Petitioner's removal after the conclusion of the appeals. The pending appeal is apparently the only cause of delay in this case. (*See* Doc. 9, at 6) ("[R]emoval hinges on the outcome of prolonged appellate proceedings and potential future litigation."). Accordingly, the fifth factor favors Respondents.

**6. The Likelihood of Removal**

"With respect to the sixth factor, the more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (internal quote omitted). It is undisputed that Petitioner has been ordered removed by an immigration judge. (Doc. 4, at 12; Doc. 8, at Ex. 6, at 15). However, with the pending appeal, this is not a final order of removal. In fact, Petitioner's immigration court proceedings have remained ongoing since Petitioner was ordered removed on October 27, 2025. (Doc. 8, at Ex. 6, at 15). Petitioner's likelihood of removal depends on the success of her appeals to the BIA and beyond. Petitioner raised at least eight distinct points of error for the BIA to consider on appeal. (Doc. 4, at Ex. 7, at 6-9). However, the

Court should decline to reach these issues in determining the likelihood of her removal. *See Vizguerra-Ramirez*, 2025 WL 3653158, at *12 ("The Court . . . respectfully declines to predict the outcome of [petitioner's] petition for review."); *Vital*, 2026 WL 1965075, at *5 ("[T]his Court makes no attempt to weigh in on that matter."). The parties have not provided persuasive arguments or evidence concerning the likelihood of the appeal's success and thus this factor is neutral. *See Kasalica v. Choate*, No. 24-cv-02664-NYW, 2024 WL 6992210, at *6 (D. Colo. Nov. 14, 2024) (finding the sixth *Singh* factor neutral when the parties did not show the likely result of petitioner's asylum claim).

**7. Conclusion**

The first four factors favor Petitioner, the fifth factor favors Respondents, and the sixth factor is neutral. In weighing these six factors, the undersigned finds that Petitioner's lengthy detention in prison conditions without an individualized bond hearing has become unreasonable in violation of her substantive due process rights. *Accord de Zarate v. Choate*, No. 23-CV-00571-PAB, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (finding that even when "[f]actors one, two, and three weigh in favor of [petitioner]; factors four and five are neutral; and factor six weighs against [petitioner]," the factors favor Petitioner and a finding that Petitioner's Due Process rights had been violated); *Jalloh II*, 2023 WL 3690259, at *6 (same).

**B. Petitioner's Detention Violates Her Procedural Due Process Rights.**

Petitioner also alleges her prolonged detention violates her procedural due process rights. (Doc. 4 at 22). Unlike § 1226 generally, § 1226(c) does not entitle a non-citizen to a bond hearing. *See Demore*, 538 U.S. at 517 ("Section 1226(c) mandates detention during

removal proceedings."). The Court analyzes Petitioner's procedural due process claim "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

As to the first step, Petitioner's interest in her physical freedom upon her supervised release from incarceration "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."); *Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of her freedom when they detained her under § 1226(c), and the deprivation will continue for an indefinite period while Petitioner pursues an appeal to the BIA.

As to the second step, "[t]he ordinary mechanism that [courts] use for determining the procedures that are necessary to ensure that a [person] is not 'deprived of life, liberty, or property, without due process of law,' . . . is the test . . . articulated in *Mathews v. Eldrige*." *Hamdi*, 542 U.S. at 538-29 (citation omitted); *see Black v. Decker*, 103 F.4th 133, 145-52 (2d Cir. 2024) ("conclud[ing] that due process challenges to prolonged detention under 1226(c) should also be reviewed under *Mathews*"). Indeed, this Court recently applied the balancing test of *Mathews* and found that procedural due process

entitles a non-citizen subject to prolonged detention under § 1226(c) to a bond hearing. *Hernandez*, Case No. CIV-26-475-R, 2026 WL 1625669, at *3.

The *Mathews* factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

As discussed above, Petitioner has a significant private interest in her liberty in general and specifically remaining free from prolonged immigration detention after spending over 42 years in the United States as a lawful permanent resident. Respondents cite *Demore* to point out that "the Supreme Court has never held that noncitizens have a constitutional right to be released from custody during the pendency of removal proceedings." (Doc. 8, at 9) (citing 538 U.S. at 530). But *Demore* was addressing a constitutional challenge to § 1226(c) on its face, not as applied to Petitioner.

Respondents suggest that Petitioner has a more limited liberty interest due to her violation of federal law. (Doc 8, at 12). However, Petitioner has served her term of imprisonment and is now eligible for supervised release where

> [she] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects [her] to many restrictions not applicable to other citizens, [her] condition is very different from that of confinement in a prison.

*Young v. Harper*, 520 U.S. 143, 147 (1997) (quoting *Morrissey*, 408 U.S. at 482). The first *Mathews* factor favors Petitioner.

The Court next considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Respondents contend that there is no risk of erroneous deprivation of liberty because detention is mandatory. (Doc. 8, at 12). Indeed, the "procedures used" for § 1226(c) detainees are "very few." *Black*, 103 F.4th at 152. "They include no mechanism for a detainee's release, nor for individualized review of the need for detention. The only procedural protection in place is the *Joseph* hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention." *Id.* (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). Because § 1226(c) detainees receive even less procedural protection than those detained under § 1226(a), "the risk of erroneous deprivation is correspondingly greater." *Id.* As the Second Circuit explained,

> [S]ection 1226(c)'s broad reach means that many noncitizens are detained who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them. Section 1226(c) sweeps in people convicted of many nonviolent offenses, and does not take into account when the prior crime was committed, suggesting that the prior conviction may well be a poor proxy for a finding of dangerousness.

*Id.* (citation modified). Given the length of Petitioner's detention to this point and the likely length of her future detention, continuing to detain her without an individualized assessment of the need for her detention – to protect the community or prevent flight – runs

the risk of violating her substantive due process rights. The additional procedural safeguard of a bond hearing ameliorates that risk.

Finally, the Court considers the Government's interest. *Mathews*, 424 U.S. at 335. The undersigned recognizes the Government's interest in protecting the community from non-citizens who have been involved in crimes that Congress has determined differentiate them from others. The Government also has an interest in ensuring Petitioner's appearance at proceedings. The Court recognizes these interests are legitimate and their importance well-established. *See Demore*, 538 U.S. at 518-21 (noting that § 1226(c) detention serves these dual purposes). The additional procedural safeguards the undersigned recommends here do nothing to undercut those interests. At any ordered bond hearing, the immigration judge would assess, on an individualized basis, whether Petitioner presents a flight risk or a danger to the community, as immigration judges routinely do for other non-citizen detainees. So this factor also weighs in Petitioner's favor.

**C. Petitioner is Entitled to a Bond Hearing.**

This Court has found that where a non-citizen has been detained for an unconstitutional length of time in violation of due process, the appropriate remedy is an individualized bond hearing. *See Hernandez*, Case No. CIV-26-475-R, 2026 WL 1625669, at *3 (ordering a bond hearing for a non-citizen subject to unconstitutional prolonged mandatory detention); *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690252, at *2 (W.D. Okla. May 26, 2023) ("*Jalloh III*") (same); *see also Vital*, 2026 WL 1965075, at *5 (same); *Juarez*, 2024 WL 1012912, at *8 (same). The Court should order the same relief for Petitioner.

## VI. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Docs. 1, 4) be **GRANTED in PART to the extent it requests habeas relief under 28 U.S.C. § 2241.** The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing within seven days or else to release her. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order.

**The court advises the parties of their right to object to this Report and Recommendation by September 8, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[6] The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

---

[6] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

**ENTERED** this 31st day of August, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE